On June 30, 1975 the court issued the following order:
*1011 Before Nichols, Judge, Presiding, Kashiwa and KuNzig, Judges.
“Two issues are presented in this Wunderlich Act review case: (1) whether the hard rock encountered in 5 channel sections constituted a changed condition requiring a contract adjustment; and (2) whether plaintiff’s termination for default was proper. The Corps of Engineers Board of Contract Appeals (Board) found the hard rock did constitute a changed condition to the extent that it required more drilling and blasting than plaintiff should have contemplated from the pre bid information. With regard to the default termination, the Board determined it proper, given plaintiff’s failure to perform diligently after recognizing the changed condition. 72-1 BCA ¶ 9316. Trial Judge Willi, in his recommended decision filed September 24,1974 [20 CCF para. 83,-379], modified, more in the plaintiff’s favor, the Board’s determination of the changed condition. The trial judge found no substantial evidence for the Board’s determination that plaintiff should have contemplated at least some blasting and drilling would be necessary. He found there was no substantial evidence at bid time that any blasting and drilling were necessary. Upon consideration of the briefs submitted and with the aid of oral argument of counsel, we reject the trial judge’s modification and affirm the original Board opinion.
“Plaintiff, as low bidder, was awarded a $3,852,000 contract by the Army Corps of Engineers on January 5, 1966. Under the terms of the contract, plaintiff was required to dredge the 24-mile shipping channel in Cape Fear River, between Southport and Wilmington Harbor, North Carolina from an existing depth of 34 feet to a new 40-feet depth, plus certain maintenance dredging. Plaintiff received notice to proceed on January 17,1966 and was required to complete the contract within 870 calendar days, i.e., no later than June 5, 1968. While attempting to perform the contract, plaintiff encountered a rock area in 5 channel sections, the hardness of which was not revealed in the 'bidding information. The hard rock area could not be removed by hydraulic dredges equipped with rock cutterheads, as plaintiff had anticipated, but rather necessitated drilling and blasting, a much more costly method of removal.
*1012 “On March 6,1968, plaintiff submitted its formal claim of changed conditions. In this claim, plaintiff asserted that nothing in the contract documents indicated that the hard rock encountered could only be removed by drilling and blasting. The contracting officer rejected this claim on April 9, 1968. On June 6, 1968, one day after the contract completion date, plaintiff was terminated for default for failure to prosecute diligently the work. Plaintiff, on June 10, 1968, timely appealed both the rejection of the changed condition and the default termination.
“The Corps of Engineers Board of Contract Appeals (Board) concluded that an experienced, knowledgeable dredging contractor such as plaintiff, after reviewing the subsurface data and core boring samples made available by the Government, should have known that some drilling and blasting would be necessary to remove the hard rock. But since the subsurface data understated the degree of hardness of the rock encountered and did not accurately reflect the elevations at which such hard rock would be found, plaintiff was entitled to a contract adjustment for changed conditions. The Board did affirm the default termination, finding that plaintiff failed to continue diligent performance of the work after January 1968. In reaching this conclusion, the Board determined plaintiff should have known, by January 1968, that drilling 'and blasting was the only satisfactory means of diligently performing the contract work.
“We affirm the Board on both counts.
“With regard to the changed condition claim, we find support in the record for the Board’s conclusion that plaintiff should have known at least some blasting and drilling would be necessary. A competitor of plaintiff’s, Mr. Aaron W. Hendry, testified that his company and at least three other bidders were sufficiently alarmed by the Government’s boring test logs to do their own additional test borings in the rock areas prior to bidding. As a result, all four companies bid the job on the basis of some degree of drilling and blasting. The Government’s own estimate of the contract cost prior to bidding also was based on the belief that some drilling and blasting would be required. At the very least, this testimony is supportive of the Board’s conclusion *1013 that plaintiff as an experienced, knowledgeable dredging contractor should have known that some drilling and blasting would be necessary.
“It is true that plaintiff and two other bidders stated they intended no drilling and blasting. However, even though there may have been evidence 'before the Board upon which it could have based a decision in favor of plaintiff, the decision which the Board made may still be found to be supported by substantial evidence when the whole record is considered. River Construction Corp. v. United States, 159 Ct. Cl. 254, 261 (1962). In the instant case, such substantial evidence is present to support the Board’s conclusion.
“The Board’s affirmation of plaintiff’s termination for default for failure to proceed diligently is likewise supported by substantial evidence. Plaintiff’s own executive, Mr. August Pistilli, testified that the very hard rock problems were first encountered in July 1967, and that redesign attempts to improve the cutters and cutting teeth of the hydraulic dredges were a total failure. In fact, he stated the cutters lasted less than four hours and individual teeth failed within a single hour. The effect of this rapid destruction of the cutters was to prevent continued timely performance of the contract relying solely on plaintiff’s dredges. It should have been apparent to plaintiff as early as July 1967 that only drilling and blasting could shatter the hard rock into fragments removable by dipperstick dredges. Yet plaintiff offered no satisfactory explanation as to why it delayed a decision to commence drilling and blasting until May 1968. Thus, the Board’s determination that plaintiff failed to live up to its contractual obligations to perform diligently, using whatever tools and methods were required to dredge the channel down to 40-feet depth, is supported by substantial evidence.
“Since the question of adjustment (in money and time) to which plaintiff was entitled on account of the changed condition was reserved by the parties, the Board made no determination of dollar amounts, if any, owed to the Government.
“it is therefore ordered that the recommended decision of the trial judge be rejected, the decision of the Corps of Engineers Board of Contract Appeals be affirmed, and this *1014 case be remanded back to the Board and contracting officer for further proceedings as indicated in the Board decision.”